UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

OSUNTOKA SMITH,

                Plaintiff,

v.                                            Case No. 25-cv-683-pp

CHRISTOPHER STEVENS, *et al.*,

                Defendants.

**ORDER DENYING PLAINTIFF'S FIRST MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), GRANTING PLAINTIFF'S SECOND MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 7) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Plaintiff Osuntoka Smith, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. nos. 2, 7, and screens his complaint, dkt. no. 1.

**I.    Motions for Leave to Proceed without Prepaying the Filing Fee (Dkt. Nos. 2, 7)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On August 8, 2025, the court ordered that the plaintiff was not required to pay an initial partial filing fee to proceed in this case. Dkt. No. 13. The court will deny the plaintiff's first, incomplete motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and will grant his second (complete) motion for leave to proceed without prepaying the filing fee, dkt. no. 7. The court will require him to pay the full $350 filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The complaint names around two dozen defendants who work at Green Bay. Dkt. No. 1 at 1. It discusses several unrelated incidents and events that the plaintiff alleges occurred at Green Bay since 2021. Id. at 2–7.

The complaint first alleges that "Lori J." refused to send the plaintiff offsite for treatment of his ear, which became infected and caused fever, chills and vomiting. Id. at 2. The plaintiff says that he contracted "py lori"[1] from receiving food through the trapdoor in his cell that prison officials also use to pass trash, handcuffs and dirty laundry. Id. He says that he developed toe, foot and skin fungus "as a result of being in continual squalor." Id. The plaintiff alleges that he now has antibiotics, but that Lori (who was his primary

---

[1] The court presumes that the plaintiff is referring to Helicobacter pylori (H. pylori), a bacterium that can cause stomach infection. See Helicobacter pylori (H. pylori) infection, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/h-pylori/symptoms-causes/syc-20356171.

physician) did not prescribe them to him; instead he received a prescription from a new physician "upon the [first] week of his arrival." Id. The plaintiff says that he asked Lori for antibiotics for four years, and that he complained to her about stomach ulcers for three years. Id. at 2–3. He alleges that he asked Lori and other Health Services Unit (HSU) staff "for stronger meds" for sciatica, tendonitis, carpal tunnel and degenerative back disease, but that he received only aspirin. Id. at 3. The plaintiff saw a pain specialist in April 2024, but Lori denied him recommended injections and prescribed only lidocaine cream. Id. He asked Lori to be sent to an offsite hospital for treatment of persistent eye irritation, but she refused. Id. Nor did the special needs committee (he does not say who is on this committee) approve his request for special housing based on his medical needs. Id.

The plaintiff alleges that he asked defendants Drew ("who runs the kitchen") and Marsha ("the supervisor") for a special needs diet, but that they ignored or denied his requests. Id. He says that he lost over thirty pounds because he could not eat many foods served at Green Bay. Id. He has continued to request a special diet, but neither the HSU nor "special need" have provided one. Id. at 4.

The plaintiff next alleges that sometime in 2025, a dentist named Brossman denied him partial dentures that he waited three years to receive and wrongly charged him a copay. Id. The plaintiff alleges that Wardens Stevens, Hess and Radtke denied his requests for a transfer because he was not receiving time out of his cell, which caused him anxiety and depression. Id. He says that a physical therapist "[d]id various massages" on his back and legs to help with his physical pain and prescribed him "a stretch band" in 2021. Id. But he says that Officer Rohdee took the stretch band, and the HSU then

stopped his physical therapy appointments. Id. The plaintiff alleges that in 2022 "[t]he staff" stopped providing mops to incarcerated persons to clean their cells. Id. The plaintiff says that he "made another former [*sic*] complaint about this" in April 2025. Id. But he says that he requested a mop for over a year, but the staff refused and stopped providing mops in January 2021 (rather than in 2022). Id. at 4–5.

The plaintiff alleges that in 2024, he asked several officials for a transfer to another facility for various reasons, but all declined. Id. at 5. This includes asking for a transfer from Bair ("head of hearing bo[a]rd") because of medical neglect, from Donna Liebergen because of his medical needs and the unsanitary conditions, from Jodene Pertu "for medical reasons etc." and from Security Director Captain Schultz and HSU Supervisor Utter for medical reasons. Id. The plaintiff reiterates that for four years, staff have failed to treat his medical needs, which has resulted in him losing teeth and suffering various ailments. Id.

The plaintiff alleges that in February 2024, he asked unspecified staff to check his thyroid because he has had blood in his stool since September 2021. Id. He reiterates that he has lost over thirty pounds but now says it occurred in one month. Id. He alleges that Dr. Henning did not respond to his request, and that unknown HSU staff told him that he "was at the correct Bmi for [his] height." Id. The plaintiff alleges that in March 2021, he became lightheaded and had to sit on the floor when he was going to breakfast. Id. He says that a lieutenant took him to the HSU, but that staff told the nurse that they believed he "was faking." Id. It is unclear how or whether this is related to his other medical issues.

The last two pages of the complaint appear to be out of order, and several lines are blacked out. Id. at 6–7. The plaintiff alleges additional concerns about

going on food strikes; inadequate food portions; inadequate treatment for his nose bleeds, chest pains and bloody stool; discriminatory treatment because of his religion; discontinuation of medical mouthrinse or toothpaste that helped treat his H. pylori infection; receipt of a false conduct report "after a white supremist came into [his] cell [and] stabbed [him]" with a pen; insufficient hygiene items; loss of canteen privileges; another false conduct report for taking soap to shower in the plaintiff's cell instead of in the group showers; denial of extra shower time; and insufficient dental treatment leading to gum disease and teeth loss. Id. The plaintiff again discusses his weight loss from H. Pylori, which he now says caused him to lose thirty-five pounds in two months. Id. at 7.

The plaintiff seeks $1 million in damages for his chronic pain and harassment that he says he "had to endure from unprofessional [and] racist staff members since 2021." Id. at 8. He also says that his "future health is in peril" because of black mold and asbestos in the cell halls and cells at Green Bay. Id.

  C. Analysis

The plaintiff may not proceed on his complaint as it currently is written. The complaint asserts numerous claims against two dozen or more defendants at Green Bay over the span of at least four years. These claims range from medical issues to inadequate food to unsanitary conditions to repeated requests for transfer to another facility. While multiple claims against a single party are fine, a plaintiff cannot bring *unrelated* claims against *different* defendants in the same case. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). "A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot." Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012). It is acceptable for a plaintiff to bring in one lawsuit all his claims against

one official, but he may add claims against other officials only if those claims "arise 'out of the same transaction, occurrence, or series of transactions or occurrences.'" Id.; see Fed. R. Civ. P. 18(a) and 20(a)(2).

The plaintiff's complaint violates Rules 18 and 20 because it seeks to allege in a single lawsuit numerous, unrelated claims against dozens of different defendants. Although the plaintiff alleges that all these events occurred while he was at Green Bay between 2021 and 2025, his claims do not have defendants in common and do not share questions of law or fact.

Ordinarily, the court would reject the plaintiff's complaint "either by severing the action into separate lawsuits or by dismissing the improperly joined defendants." Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011) (citing Fed. R. Civ. P. 21). But the court will not do that here because the plaintiff's complaint is unwieldy, difficult to follow and alleges too many unrelated claims for the court to try to separate them out. Instead, the court will dismiss the complaint for violating Rules 18 and 20 and order the plaintiff to file an amended complaint that focuses on the claim of his choice. If the plaintiff wants to bring multiple claims against different defendants, he must explain how those claims and defendants relate to one another. The plaintiff must file separate lawsuits for any unrelated claims, and he must pay separate filing fees for any additional case that he files.

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to

7

provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form. The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, and **those pages must be double-spaced** so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He instead must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claims.

There are a few additional problems with the complaint; knowing about those problems may help the plaintiff limit the claims that he seeks to bring in an amended complaint. First, some of the plaintiff's claims may be untimely. The relevant statute of limitation for actions brought under §1983 is "the statute of limitations for personal injuries supplied by the state in which the claim arose." Huber v. Anderson, 909 F.3d 201, 207 (7th Cir. 2018) (citing Wallace v. Kato, 549 U.S. 384, 387 (2007)). The limitation period for §1983 actions arising in Wisconsin after April 5, 2018 is the three-year limitation provision prescribed by Wis. Stat. §893.54 (2018). See id. (citing 2017 Wis. Act 235 (eff. Apr. 5, 2018)). The plaintiff alleges that Green Bay officials have violated his rights since at least 2021. But he did not bring this lawsuit until May 9, 2025. Any claim that the plaintiff could have brought more than three

years ago—before May 9, 2022—likely is untimely under Wisconsin's three-year statute of limitations.

The plaintiff also alleges that several officials denied him a transfer to another correctional institution or facility. But incarcerated persons do not have a constitutional right to be assigned to a particular prison, security classification or housing assignment. See Olim v. Wakinekona, 461 U.S. 238, 245–46 (1983); Montanye v. Haymes, 427 U.S. 236, 243 (1976); Meachum v. Fano, 427 U.S. 215, 225 (1976). That means the plaintiff likely cannot state a claim against any official who only denied his request to be transferred to another facility or housing unit at Green Bay.

The court reminds the plaintiff that under §1983, he may proceed only on allegations that amount to a violation of a federally protected right (that is, a violation of *federal* law or the *federal* Constitution). The court advises the plaintiff to carefully review his complaint when deciding which claim or claims to include in an amended complaint.

### III. Conclusion

The court **DENIES** the plaintiff's first, incomplete motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **GRANTS** the plaintiff's second, complete motion for leave to proceed without prepaying the filing fee. Dkt. No. 7.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive* it by the end of the day on **November 14, 2025**. If the court receives an amended complaint

by the end of the day on November 14, 2025, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the deadline, or if his amended complaint again seeks to proceed on unrelated claims against different defendants, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the full **$350** filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Green Bay Correctional Institution, where the plaintiff is incarcerated.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 14th day of October, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**