UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

OSUNTOKA SMITH,

Plaintiff,

v.                                                    Case No. 25-cv-683-pp

CHRISTOPHER STEVENS, *et al.*,

Defendants.

---

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 18), DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND TO ADD PARTY (DKT. NO. 23) AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER (DKT. NO. 25)**

---

Plaintiff Osuntoka Smith, who is incarcerated at the Wisconsin Secure Program Facility and is representing himself, filed this case alleging violations of his constitutional rights. The court screened the complaint and determined that it did not state a claim. Dkt. No. 16 at 9. The court gave the plaintiff an opportunity to file an amended complaint. Id. at 9-10. The court received from the plaintiff that amended complaint, dkt. no. 18, as well as a motion for leave to file second amended complaint and to add a party, dkt. no. 23, and a motion for a preliminary injunction and temporary restraining order, dkt. no. 25. This order screens the amended complaint and addresses the plaintiff's motions.

**I.     Screening the Amended Complaint (Dkt. No. 18)**

    A.     Federal Screening Standard

Under the Prison Litigation Reform Act (PLRA), the court must screen complaints brought by incarcerated persons seeking relief from a governmental

1

entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d

2

824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    Amended Complaint's Allegations

The plaintiff was incarcerated at Green Bay Correctional Institution during the events described in his complaint. The plaintiff sues twenty-two defendants who work at Green Bay and allegedly were involved in denying him proper dental care between 2022 and 2025.

The plaintiff alleges that defendant J. Dinse, who works in the business office at Green Bay, has been taking 100% of the plaintiff's wages since 2022. Id. at ¶1. On May 24, 2023, Dinse allegedly told the plaintiff that they were going to continue taking all his money until his debts were satisfied, which prevented the plaintiff from buying oral hygiene products. Id. The plaintiff's periodontal disease allegedly spread, which caused abscess outbreaks and loss of teeth. Id.

The plaintiff alleges that from 2022 through 2024, defendant Sergeant Retzlaff, who presided over the south cell hall where the plaintiff was housed, distributed one, 1.5 ounce tube of toothpaste every four to five months instead of every two weeks. Id. at ¶2. During that same time, defendant Sergeant Alt also allegedly distributed toothpaste only every four to five months. Id. at ¶3.

The plaintiff alleges that in 2024, the "special needs committee" denied his request to restart him on a medicated mouth rinse that had been

discontinued in 2021. Id. at ¶4. This allegedly contributed to the growth and spread of abscesses, loose teeth, gum bleeding, pus and sharp heart pains. Id.

The plaintiff alleges that between 2023 and 2025, he requested gum cleanings from two or three Doe defendant dentists "to stall the spread of his gum disease & not affect other teeth & prevent abscess outbreaks & stop the daily bleeding & pussing [sic] which prevented [him] from eating for days." Id. at ¶5. The plaintiff states that he was given only two gum cleanings during this time. Id. He says that in July 2025, he was able to have teeth extracted "only after [his] tooth was chipped on a breakfast bagel." Id.

The plaintiff alleges that in February 2024, the Doe defendant regional nursing coordinator was notified that his medical needs were not being met. Id. at ¶6.

The plaintiff alleges that between May 2023 and September 2024, defendant Nurse Henning denied his request for dental mouthwash, gum cleaning or tooth extraction. Id. at ¶7. The plaintiff alleges that beginning in 2022, he told defendant Lori that he needed gum cleaning, mouth rinse and tooth extraction, but that "she never sent [him] to the hospital." Id. at ¶8. On December 10, 2024, Henning allegedly messaged Lori again about needing these services. Id. The plaintiff states that between 2023 and 2025, he asked if he could be placed on a diet tray because his teeth were very loose and sensitive to hot food, but she denied his request. Id.

The plaintiff alleges that between 2022 and 2025 he informed the Doe defendant south cell hall unit managers that he was not being treated for gum

4

disease and notified them of his need for a special diet because of loose teeth and abscesses. Id. at ¶9.

The plaintiff alleges that on May 9, 2025, defendant K. Vandenansh denied him painkillers for his chipped tooth and abscesses caused by his rear molar. Id. at ¶10. The plaintiff alleges that on June 10, 2025, defendant Nurse Kilmer refused to "refile his 500 mg aspirin because he was on a hunger strike." Id. at ¶11.

The plaintiff alleges that between 2022 and 2025 he notified the Doe defendant head of the health services unit (HSU) that he was going on a hunger strike because of medical neglect, but he did not get a response. Id. at ¶12.

The plaintiff alleges that in 2022, he explained to the warden that he had periodontal disease, which could lead to loss of enamel, abscesses and cardiac issues if he didn't have his gums cleaned every three to four months. Id. at ¶13. The plaintiff also allegedly notified the warden that he had gone on a three-week hunger strike for dental assistance but hadn't received any help. Id. The plaintiff alleges that in 2024, he informed defendant Warden Stevens that he had periodontal disease and was not being treated for it, and that as a result he would miss a lot of meals because of abscesses and loose teeth and having sharp pains in his heart because his gums bled daily. Id. at ¶14. The plaintiff also allegedly informed Stevens that he was going on hunger strikes for dental assistance and that he wanted a lateral transfer to another facility that had a competent dentist. Id.

5

The plaintiff alleges that in 2024 he informed defendant Security Director Michael Schultz that he was in continual pain and not able to get assistance from the HSU for his periodontal disease. Id. at ¶15. The plaintiff allegedly requested a lateral transfer to another facility with a dentist stationed onsite, but Schultz refused the plaintiff's request. Id. The plaintiff alleges that in 2024 he asked defendant Donna Liebergen for a lateral transfer because of dental needs not being met for years and that as a result, many of his teeth had become loose, he had heart pains and chronic bleeding of his gums. Id. at ¶16. She allegedly refused his request. Id. The plaintiff alleges that in May 2025, he asked defendant Jodene Perttu for a lateral transfer after chipping his bottom tooth into a breakfast bagel in January or February of 2025. Id. at ¶17. The plaintiff states that she denied his request. Id. The plaintiff alleges that he asked defendant Heil (who works in the classification department) and defendant Bair for a lateral transfer because his dental needs were not being met, but they denied his requests. Id. at ¶¶18-19.

The plaintiff alleges that from 2022 through 2023, he asked defendant Dr. Jerome to prescribe him toothpaste or restart him on chlorhexidine[1] because he wasn't getting toothpaste every two weeks. Id. at ¶20. Jerome allegedly denied the plaintiff's request. Id.

---

[1] A solution used to treat gingivitis, by helping reduce inflammation and swelling of gums and reducing gum bleeding. https://www.mayoclinic.org/drugs-supplements/chlorhexidine-oral-route/description/drg-20068551.

The plaintiff alleges that in 2024, the complaint examiner contacted the defendant BHS (Bureau of Health Services) dental director about the plaintiff's inmate complaint and appeal. Id. at ¶21.

For relief, the plaintiff seeks compensatory damages and a lateral transfer to a facility with an on-site dentist so that he can get routine gum cleanings. Id. at page 6.

C.     Analysis

The court analyzes the plaintiff's allegations regarding the denial of proper dental care under the Eighth Amendment. See Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (en banc) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015) (citing Farmer, 511 U.S. at 837). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011) (citing McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)).

The plaintiff alleges that he did not receive adequate dental care, which resulted in abscesses, loose teeth, a chipped tooth, loss of teeth, heart pain and gum disease. The Seventh Circuit Court of Appeals has said that "dental care is one of the most important medical needs of inmates." Board v. Farnham, 394 F.3d 469, 480 (7th Cir. 2005) (quotation omitted). The court finds that the plaintiff's allegations about his inadequate dental care satisfy the objective component of an Eighth Amendment claim.

The plaintiff sufficiently has alleged that defendants Stevens, Henning, PSW Lori, Jerome, John/Jane Doe Dentists 2023-2025 and Doe Warden 2022 acted with deliberate indifference. The plaintiff may proceed on an Eighth Amendment claim against these defendants in their individual capacities. Once the named defendants have filed a responsive pleading to the amended complaint and the court issues a scheduling order, the plaintiff may use discovery to identify the Doe defendants.

The plaintiff has not stated claims against the remaining defendants. He alleges that Dinse, who works in the business office, took all his wages, but he does not allege that Dinse had any involvement in the plaintiff's dental care (or knew that taking his wages would affect his ability to get dental care). The plaintiff may not proceed against Retzlaff and Alt; the plaintiff alleges that they distributed toothpaste every four to five months instead of every other week. But the plaintiff has not alleged that they had any involvement in the dental care he says he needed or that they denied any request for more toothpaste. The plaintiff may not proceed against the "special needs committee." He alleges

8

only that the committee denied his request for mouthwash, but he does not explain who was on the committee, whether that committee knew about his dental condition or that the committee had any involvement in treating that condition. The plaintiff may not proceed on a claim based on allegations that in February 2024, the Doe regional nursing coordinator was notified that his medical needs were not being met. The plaintiff does not explain what the regional nursing coordinator was told or what he believes the regional nursing coordinator should have done about his medical needs. The plaintiff may not proceed against the south cell hall unit managers based on allegations that between 2022 and 2025 he informed them that he was not being treated for gum disease and notified them of his need for a special diet because of loose teeth and abscesses. The plaintiff's allegations against these Doe defendants are vague, they cover three years and the plaintiff has not explained how those managers responded to his requests. The plaintiff may not proceed against defendant Vandenansh based on allegations that on one day, May 9, 2025, Vandenansh denied him painkillers for his chipped tooth. The plaintiff does not say how long he went without painkillers or why Vandenansh denied them. The plaintiff may not proceed against defendant Kilmer for allegedly refusing to "refile" the plaintiff's aspirin because he was on a hunger strike. The plaintiff may not proceed on a claim based on allegations that between 2022 and 2025 he notified the head of the health services unit (HSU) that he was going on a hunger strike because of medical neglect, but did not get a response. The

9

plaintiff has not alleged that this defendant failed to provide him adequate dental care.

The plaintiff has sued several defendants for allegedly denying his request for a "lateral transfer" to an institution that had an onsite dentist. The plaintiff may not proceed on a claim based on their alleged denials of his request to transfer. The court will dismiss defendants Schultz, Liebergen, Perttu, Heil and Bair. Finally, the plaintiff does not state a claim against Doe BHS dental director based on allegations that in 2024, the complaint examiner contacted this defendant about the plaintiff's inmate complaint and appeal.

## II.  Motion for Leave to File Second Amended Complaint (Dkt. No. 23)

The plaintiff has filed a motion for leave to file a second amended complaint. Dkt. No. 23 at 1. He says that on November 19, 2025, CO Tristan Kraujalis performed a cell search on his cell and wrote him a ticket for loss of eight days of telephone for having extra property in his cell. Id. at 1-2. The plaintiff says that Kraujalis removed linen from his cell so he couldn't wash properly, which resulted in the plaintiff having an outbreak all over his body. Id. at 2. The plaintiff also alleges that he asked Captain Roz for a wash rag and towel so that he could wash properly, but that she denied his request. Id. The plaintiff states that before Roz took over in segregation, toothpaste was distributed weekly, but now it's distributed only once or twice a month. Id. The plaintiff says that he now has abscesses forming around his good teeth. Id. Roz allegedly denied the plaintiff's request for his toothbrush after he told her his "plastic finger toothbrush" wasn't helping him. Id. The plaintiff describes other

10

conditions in segregation, such as not being allowed to shave and access to pain killers only twice a day instead of the four times a day he received them in general population. Id. at 2-3.

The plaintiff's motion to amend the complaint consists of allegations that he wants to include in his second amended complaint. Dkt. No. 23. But he has not filed a proposed second amended complaint as required by the court's Local Rules. See Civil Local Rule 15(a) (E.D. Wis.) ("Any amendment to a pleading . . . must reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference."). If the plaintiff wants the court to consider allowing him to file a second amended complaint, he must file a motion to amend stating what changes he seeks to make through the proposed amendments along with a comprehensive proposed second amended complaint. Civil L.R. 15(b). Because the plaintiff has not filed a proposed second amended complaint, the court will deny his motion to amend.

The claims in any amended complaint must sufficiently relate to the plaintiff's claims in this case. The plaintiff may bring in one lawsuit all his claims against one official, but he may add claims against other officials only if those claims "arise 'out of the same transactions, occurrence, or series of transactions or occurrences.'" Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012); see also Fed. R. Civ. P. 18(a) and 20(a)(2).

### III. Motion for Preliminary Injunction and Temporary Restraining Order (Dkt. No. 25)

The plaintiff filed a motion for preliminary injunction and temporary restraining order. Dkt. No. 25. He states that since he filed this case, staff at

11

Green Bay have been harassing him and retaliating against him. Dkt. No. 26 at 1, 4. The plaintiff filed unsupported proposed findings of fact in which he says that non-defendant Green Bay staff have harassed him in various ways. Dkt. No. 27 at 1-8. (Some of the pages of the plaintiff's proposed findings of fact are illegible because the writing is so light.)

The Supreme Court has characterized "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). To obtain a preliminary injunction, a plaintiff must show that: (1) plaintiff has some likelihood of success on the merits; (2) traditional legal remedies would be inadequate; and (3) plaintiff will likely suffer irreparable harm in the absence of preliminary relief. Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020). "If a plaintiff makes such a showing, the court proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." Id. (citing Courthouse News Serv. v. Brown, 908 F.3d 1063, 1068 (7th Cir. 2018)). The balancing analysis involves a "'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." Id. (citing Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 895 (7th Cir. 2001)).

In the context of litigation by incarcerated individuals, the scope of the court's authority to issue an injunction is circumscribed by the PLRA. See

12

<u>Westefer v. Neal</u>, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2); <u>see also</u> <u>Westefer</u>, 682 F.3d at 683 (noting the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prisons officials have broad administrative and discretionary authority over the institutions they manage" (internal quotation marks and citation omitted)).

The plaintiff has not requested any specific relief in his motion for preliminary injunction. His conclusory assertions that non-defendant Green Bay staff have harassed and retaliated against him for filing this lawsuit do not warrant injunctive relief. The court will deny the plaintiff's motion for preliminary injunction and temporary restraining order.

## IV.     Conclusion

The court **DISMISSES** defendants J. Dinse, Sgt. Retzlaff, Sgt. Alt, special needs committee, Doe regional nursing coordinator 2024, Doe south cell hall unit managers 2022-2025, K. Vandenansh, RN Kilmer, Doe head of HSU 2022-25, Michael Schultz, Donna Liebergen, Jodene Perttu, Heil, Bair and Doe BHS dental director.

The court **DENIES** the plaintiff's motion for leave to file second amended complaint. Dkt. No. 23.

13

The court **DENIES** the plaintiff's motion for preliminary injunction and temporary restraining order. Dkt. No. 25.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for service on defendants Nurse Henning, PSW Lori, Christopher Stevens and Dr. Jerome. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

---

[2] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 21st day of May, 2026.

BY THE COURT:

_____

HON. PAMELA PEPPER
Chief United States District Judge

15